UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL D. DYDZAK,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>    Defendants. | Case No. 17-cv-04360-EMC<br><br>**ORDER GRANTING DEFENDANT CANTIL-SAKAUYE'S MOTION TO DISMISS AND SUA SPONTE DISMISSING CLAIMS AGAINST ALL DEFENDANTS**<br><br>Docket No. 9, 14 |

Before the Court is Defendant Tani Cantil-Sakauye's motion to dismiss. In addition, on September 15, 2017, the Court ordered Mr. Dydzak to show cause why the remaining claims against other defendants should not also be dismissed. *See* Docket No. 14. Mr. Dydzak was granted an extension to respond to the order to show cause and to Defendant Cantil-Sakauye's motion. *See* Docket No. 23. He filed a written response to both. *See* Docket Nos. 29, 30. A hearing was held on both matters on October 26, 2017. *See* Docket No. 34. Mr. Dydzak appeared and presented argument.

For the reasons below, Defendant's motion is **GRANTED** and the Court, on its own motion, **DISMISSES** the remaining claims.

## I.    BACKGROUND

This is the latest in a long line of cases brought by Daniel D. Dydzak since his disbarment by the California State Bar in 2010.[1] In this case, Mr. Dydzak alleges that various defendants—including federal district court judges, Ninth Circuit judges, California state judges, attorneys

---

[1] *See State Bar of CA: Daniel D. Dydzak*, The State Bar of California, http://members.calbar.ca.gov/fal/Member/Detail/121857.

1 previously adverse to Mr. Dydzak, a number of banks or investment advisors, and their family
2 members or alleged associates—have conspired against him, resulting in adverse rulings in his
3 prior litigation. Essentially, Mr. Dydzak posits that his disbarment, the dismissal of many
4 previous lawsuits, the denial of disqualification motions he has filed in other cases, and his losses
5 on a number of appeals were not made for legitimate reasons, but rather, were the result of
6 improper influence exerted in part through the presiding judges' ex parte communications with
7 interested parties or conflicts of interest arising out of their alleged personal, professional, or
8 financial associations.

To the extent relevant to Mr. Dydzak's claims in this case,[2] the Court recounts Mr. Dydzak's prior litigation, and associated rulings, below.[3]

A. Dydzak v. George

The *Dydzak v. George* matter involved a 77-page complaint against 33 defendants (including Defendant Ronald M. George). *See Dydzak v. George*, Case No. 10-5820 SVW, Docket No. 1 (C.D. Cal. 2010). Mr. Dydzak alleged that judges, adverse lawyers, and other entities conspired to have him disbarred in retaliation for his representation of a client in an earlier lawsuit against Defendant Alan Rothenberg (former California State Bar President and "establishment lawyer"). The *George* defendants were also accused of thwarting his various challenges to his disbarment. Mr. Dydzak brought causes of action under 42 U.S.C. § 1983 and state torts for fraud and intentional interference with economic relations.

---

[2] Many other cases involve similar allegations but were not directly invoked by Mr. Dydzak in the complaint in this case. *See, e.g., Dydzak v. Rothenberg et al.,* Case No. BC463363, Superior Court of the State of California, County of Los Angeles, Central District; *Dydzak v. Dunn et al.*, Case No. 30-2012-00558031, Superior Court of the State of California, County of San Diego; *Dydzak v. State of California, et al.*, C08-7765-VAP (AGR) (C.D. Cal. 2008); *Dydzak v. Remke et al.*, C10-0828-UA-AGR (C.D. Cal. 2010); *Dydzak v. Remke, et al.*, C10-1297-AHM-AGR (C.D. Cal. 2010); *Dydzak v. George*, Case No. 10-5820-SVW (C.D. Cal. 2010); *Dydzak v. Cantil-Sakauye*, Case No. 11-5560-JCC (C.D. Cal. 2011); *Dydzak v. Schwarzenegger*, Case No. 12-8759, Docket No. 1 (C.D. Cal. 2012); *Dydzak v. Alexander*, 2:16-cv-02915-ODW (C.D. Cal. June 1, 2016); *Dydzak v. Schwab*, Case No. 4:16-cv-4799-YGR (N.D. Cal. 2016).

[3] The facts related to his prior litigation are subject to judicial notice because they are court filings that are a matter of public record. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts may take judicial notice of court filings and matters of public record). For the same reason, the request for judicial notice filed by Defendant Cantil-Sakauye is granted. *See* Docket No. 10.

The case was presided over by Judge Stephen V. Wilson. In an 18-page order, Judge Wilson dismissed Plaintiff's claims with prejudice, concluding they were barred by collateral estoppel (in light of his prior litigation in state court), judicial immunity, and the Eleventh Amendment. *See Dydzak v. George*, Case No. 10-5820 SVW, Docket No. 16 (C.D. Cal. Nov. 8, 2010). Plaintiff filed a motion for reconsideration, which was denied. *See Dydzak v. George*, Docket Nos. 17 and 23. He then appealed to the Ninth Circuit, *id.*, Docket No. 24, and filed a motion to disqualify Judge Wilson and all judges of the Central District of California, *id.*, Docket No. 28. The motion was referred to Judge Robert Whaley of the Eastern District of Washington, who denied it. *Id.*, Docket No. 32. Meanwhile, the Ninth Circuit denied Plaintiff's motion to disqualify all Ninth Circuit judges and to refer his appeal to the Federal Circuit. *Id.*, Docket No. 40. He filed a renewed motion to transfer his appeal to the Federal Circuit, which was also denied; the Ninth Circuit affirmed the district court's dismissal of Plaintiff's claims. *Id.*, Docket No. 44.

Judges Wilson and Whaley are now Defendants in this case.

B. <u>Dydzak v. Cantil-Sakauye</u>

The *Dydzak v. Cantil-Sakauye* matter involved a 38-page complaint against 47 defendants under 42 U.S.C. Section 1983. *See Dydzak v. Cantil-Sakauye*, Case No. 11-5560-JCC (C.D. Cal. 2011). Mr. Dydzak alleged that he was disbarred in retaliation for prior litigation he had brought against Defendant Alan Rothenberg, and that his subsequent legal challenges were thwarted by conspiracies somehow connected to said lawyer. Mr. Dydzak also alleged that in July 2011, he sent a letter to the California Supreme Court Justices, including Judge Cantil-Sakauye, purporting to inform them of the illegalities associated with his disbarment, but that they took no action. That appears to have been the sole allegation against Judge Cantil-Sakauye.

The case was heard by Judge John C. Coughenour of the Eastern District of Washington by special designation. *Dydzak v. Cantil-Sakauye*, Case No. 11-5560-JCC, Docket No. 8 (C.D. Cal. 2011). Judge Coughenour issued a sua sponte order to show cause why the case should not be dismissed, and later dismissed all claims. *Id.*, Docket Nos. 12 and 16. He also issued an order to show cause why Plaintiff should not be sanctioned for failing to comply with Rule 11 and should not be declared a vexatious litigant. *Id.*, Docket Nos. 16 and 19. Mr. Dydzak then moved

3

1 to disqualify Judge Coughenour, a motion that was referred to Judge Justin L. Quackenbush of the
2 Eastern District of Washington, who denied it. *Id.*, Docket Nos. 23, 29, 33. Judge Coughenour
3 then declared Plaintiff a vexatious litigant and entered a pre-filing order barring Plaintiff from
4 "initiating any further litigation in this or any other federal court alleging deprivation of rights
5 under 42 U.S.C. § 1983 or *Bivens* based on his disbarment without the prior authorization from the
6 presiding judge of the U.S. District Court for the Central District of California" and "provid[ing]
7 security in the amount of $5,000 for each defendant against whom he seeks to proceed with Court
8 authorization." *Id.*, Docket No. 35.

9 Plaintiff appealed to the Ninth Circuit, unsuccessfully requesting transfer to another court
10 of appeals. *Id.*, Docket Nos. 37 and 44. The Ninth Circuit panel including Judges Edward Leavy,
11 Consuelo M. Callahan, and Milan D. Smith affirmed Judge Coughenaur's dismissal of Plaintiff's
12 claims and the pre-filing order. *See Dydzak v. Cantil-Sakauye, et al.*, 603 Fed.Appx. 622 (9th Cir.
13 2015).

14 Judges Coughenour, Leavy, Callahan, and Smith are now Defendants in this case.

15 C. <u>Dydzak v. Schwarzenegger</u>

16 In this 75-page complaint against over 100 defendants (including Defendants Ronald
17 George, Eric George, Alan Rothenberg, Charles Schwab, and Tani Cantil-Sakauye, and the
18 Bancshares entities), Mr. Dydzak alleged that his bar disciplinary proceedings were tainted and
19 illegal and were politically motivated because he successfully represented clients against
20 Defendant Alan Rothenberg and First Century Bank, for which Rothenberg was allegedly Chief
21 Operating Officer. *See Dydzak v. Schwarzenegger*, Case No. 12-8759, Docket No. 1 (C.D. Cal.
22 2012). He alleged that a state court lawsuit he brought challenging his disbarment, *Dydzak v.*
23 *Dunn et al*, was fixed by Defendants. His claims were brought under Section 1983 and RICO.

24 This case was originally filed in the District for the District of Columbia, where it was
25 transferred by Judge Ellen S. Huvelle to the Central District of California. Plaintiff moved for
26 reconsideration of the transfer order and for disqualification of Judge Huvelle; both requests were
27 denied. *Id.*, Docket Nos. 4, 5, and 6. It was heard by Judge Manuel L. Real, who issued an order
28 to show cause why the case should not be dismissed for failure to comply with Judge

4

1 Coughenour's pre-filing order. *Id.*, Docket No. 9. After Judge Real dismissed the complaint, *id.*, Docket No. 11, Plaintiff filed a motion to disqualify Judge Real. *Id.*, Docket No. 12. The disqualification motion was heard and denied by Judge Christina A. Snyder. *Id.*, Docket Nos. 13, 14. Plaintiff appealed to the Ninth Circuit, but his appeal was dismissed because he failed to pay the required filing fees. *Id.*, Docket Nos. 18, 19, 20. His request to proceed on appeal in forma pauperis was denied based on the Ninth Circuit's finding "that the appeal is frivolous." *Id.*, Docket No. 19.

Judges Huvelle, Real, and Coughenour are now Defendants in this case.

D. Dydzak v. Alexander

The complaint for this case has apparently been sealed and therefore the Court cannot view it or take judicial notice. Nevertheless, Judge Otis D. Wright, II's order of dismissal summarizes the claims and allegations. *See Dydzak v. Alexander*, 2:16-cv-02915-ODW, Docket No. 23 (C.D. Cal. June 1, 2016). The order recounts that Mr. Dydzak alleged a conspiracy by defendants (including FBI agents, prosecutors, federal judges, and private parties) to harass and wiretap him in violation of Section 1983 and the Federal Wiretap Law (18 U.S.C. § 2520), causing him emotional distress. In this case, too, Mr. Dydzak had filed a motion to disqualify Judge Wright, which was referred to Judge Michael W. Fitzgerald and denied. *Id.*, Docket No. 21. Mr. Dydzak appealed to the Ninth Circuit, and his appeal was dismissed for failure to pay required filing fees. *Id.*, Docket No. 28.

When Mr. Dydzak moved to reverse and set aside the dismissal, the Ninth Circuit rejected his request and stated on January 17, 2017 that "Appellant Daniel David Dydzak is prohibited from communicating with this court except communication in writing. Any communication with this court aside from written communication will not be considered. In addition, any communications related to appeals in which the clerk has been directed not to entertain further filings will be discarded and will not be placed on the docket. No further filings will be entertained in this closed case." *Id.*, Docket No. 29.

E. Dydzak v. Schwab

This 17 page complaint against 12 defendants (including Defendants Charles Schwab,

5

Molly Dwyer, Alan Rothenberg, Ronald George, and Eric George) alleged that the *Dydzak v. George* case was fixed by the defendants, who were federal district court or appellate judges who presided over the *George* case or their alleged private party co-conspirators. Mr. Dydzak brought 5 causes of action under *Bivens*/Section 1983, for intentional infliction of emotional distress, and for conspiracy to tortuously interfere with court process.

This case was assigned to Judge Yvonne Gonzales-Rogers who, on motion of the defendants, dismissed Plaintiff's claims. *Dydzak v. Schwab*, Case No. 4:16-cv-4799-YGR, Docket No. 70 (N.D. Cal. Nov. 30, 2016). Plaintiff then moved to disqualify Judge Gonzales Rogers. The disqualification motion was referred to Judge Claudia Wilken, who denied it. *Id.*, Docket No. 77. Judge Rogers then denied Plaintiff's pending motion for reconsideration of the dismissal order. *Id.*, Docket No. 78. Plaintiff filed an appeal to the Ninth Circuit in January 2017, but apparently has not yet paid the filing fees. *Id.*, Docket Nos. 80, 83.

Judges Gonzales Rogers and Wilken are now defendants in this case.

## II. <u>LEGAL STANDARD</u>

In considering a Rule 12(b)(6) motion to dismiss, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer,* 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Id.*

Further, it is not sufficient to merely allege a conspiracy. Rather, a complaint must include "enough factual matter (taken as true) to suggest than an agreement was made." *Twombly*, 550 U.S. at 556. The standard "calls for enough fact to raise a reasonable expectation that discovery

6

will reveal evidence of an illegal agreement." *Id.* Courts should not "permit factfinders to infer conspiracies when such inferences are implausible." *Stanislaus Food Prod. Co. v. USS-POSCO Industries*, 803 F.3d 1084, 1089 (9th Cir. 2015) (citation and quotation omitted); *see also Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) (a plaintiff "must state specific facts to support the existence of the claimed conspiracy" to state a claim for conspiracy to violate one's constitutional rights). "Conclusory allegations" that private parties conspired with government officials to deprive a plaintiff of their civil rights are insufficient to state a claim. *See Simmons v. Sacramento County Sup. Ct.*, 318 F.3d 1156 (9th Cir. 2003); *see also Bhardwaj v. Pathak*, 668 Fed.Appx. 763, 765 (9th Cir. 2016) (affirming dismissal of claims that judge, attorneys, and court reporter conspired to tamper with hearing transcripts as "highly implausible, vague, and conclusory as to the existence of a conspiracy").

Claims sounding in fraud are also subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir. 1985). Generally, claims sounding in fraud must allege "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted). The plaintiff must set forth "what is false or misleading about a statement, and why it is false." *In re Glenfed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir.1994) (en banc), *superseded by statute on other grounds as stated in Ronconi v. Larkin,* 253 F.3d 423, 429 n. 6 (9th Cir. 2001).

### III. <u>DISCUSSION</u>

In light of the pre-filing order entered against Mr. Dydzak by the Central District of California, the Court will first consider to what extent, if any, that order applies to Mr. Dydzak's

claims here.  The Court will then consider to what extent Plaintiff's claims must be dismissed on the basis of judicial immunity.  Finally, the Court will consider Defendant Cantil-Sakauye's motion to dismiss[4] and Plaintiff's claims against the remaining Defendants.

A. Pre-Filing Order

The Central District of California's order states that "Plaintiff is PROHIBITED from initiating any further litigation in this or any other federal court alleging deprivation of his rights under 42 U.S.C. § 1983 or *Bivens* based on his disbarment without the prior authorization from the presiding judge of the U.S. District Court for the Central District of California . . ." Request for Judicial Notice, Ex. 1 at 10.

Defendant Cantil-Sakauye argues that the pre-filing order applies to Mr. Dydzak's claims against her in this case.  A broad reading of the order's language might suggest that any litigation which includes *Bivens* or § 1983 claims based on Mr. Dydzak's disbarment is prohibited absent pre-authorization.  However, because pre-filing orders affect an individual's First Amendment rights, they "must be narrowly tailored to the vexatious litigant's wrongful behavior." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1061 (9th Cir. 2007).  It follows that such orders should also be narrowly construed.  Accordingly, the order must be construed based on its literal terms to apply only to *Bivens* and § 1983 claims that are based on Mr. Dydzak's disbarment, not to other claims.  The pre-filing order therefore does not require dismissal of Mr. Dydzak's state torts claims for intentional infliction of emotional distress and conspiracy to interfere with lawful court processes against Defendant Cantil-Sakauye.

With respect to Mr. Dydzak's claims against other Defendants, his First Cause of Action,

---

[4] Mr. Dydzak claims that the California Attorney General is prohibited from representing Defendant Cantil-Sakauye because he sues her in her individual, rather than official, capacity.  But California law provides that "upon request of an employee or former employee, a public entity shall provide for the defense of any civil action proceeding brought against him, in his official *or* individual capacity or both, on account of an act or omission in the scope of his employment as an employee of the public entity." Cal. Gov. Code § 995.  Moreover, Mr. Dydzak lacks standing to demand disqualification of the California Attorney General. *See Lakes Const., Inc. v. Burman*, 186 Cal.App.4th 1347, 1357 (2010) (holding that "a moving party must have standing, that is, an invasion of a legally cognizable interest, to disqualify an attorney").  For that reason, the Court denies Mr. Dydzak's request to disqualify the California Attorney General from representing Defendant Cantil-Sakauye as well as his request the Court strike her motion.

8

although brought under *Bivens*/Section 1983, alleges that Defendant Judge Sidney Thomas of the Ninth Circuit Court of Appeals and Defendant Molly Dwyer, Clerk of the Ninth Circuit Court of Appeals, unlawfully blocked his phone calls to that court beginning in February 2017. Compl. ¶¶ 35-36. This claim does not appear to be "based on his disbarment," so it is not covered by the pre-filing order.

However, Mr. Dydzak's *Bivens* and Section 1983 claims in the Ninth, Twelfth, Sixteenth, Seventeenth, Nineteenth, and Twenty-Fifth causes of action are covered by the order. They are "based on his disbarment" because they involve allegations that the Defendant judges presiding over Mr. Dydzak's prior litigation (in which he sought to set aside his disbarment or to set aside adverse rulings in challenges to his disbarment) entered orders which were unlawful or the product of various ex parte communications and conflicts of interest. These claims are **DISMISSED** without prejudice to re-filing in the Central District of California, consistent with the pre-filing order.

B.  Judicial Immunity

Defendant Cantil-Sakauye also argues that the claims against her should be dismissed on the basis of judicial immunity. For the reasons below, the Court finds that judicial immunity does not apply to the claims asserted against Justice Cantil-Sakauye. However, the judicial immunity doctrine does require dismissal of several of Mr. Dydzak's claims against other defendants, as described below.

"Judges are absolutely immune from civil liability for damages for their judicial acts." *Mullis v. U.S. Bankruptcy Court for Dist. of Nevada*, 828 F.2d 1385, 1394 (9th Cir. 1987). This principle applies equally to federal and state judges. The Supreme Court has held, however, that state judges do not enjoy immunity from actions for equitable or injunctive relief brought under 42 U.S.C. Section 1983. *See Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984). That exception does not extend to federal judges. In *Mullis*, the Ninth Circuit held that "[w]here a federal official meets the prerequisites for judicial or quasi-judicial immunity from damages, there will invariably be an adequate remedy through either ordinary appeals or by extraordinary writ." 828 F.2d at 1392. In those circumstances, a litigant would not be able to show "an inadequate remedy 'at law' *and* a

9

serious risk of irreparable harm, prerequisites to injunctive relief." *Id.* To permit such actions would permit litigants to "circumvent the limitations on direct appeal, including interlocutory appeal, and for extraordinary writs." *Id.* It would "permit, in effect, a 'horizontal appeal' from one district court to another or even a 'reverse review' of a ruling of the court of appeals by a district court." *Id.* at 1392-93. Such attacks, the Ninth Circuit held, "are improper." *Id.* at 1393. The reasoning in *Mullis* accords with Supreme Court precedent regarding the purpose of judicial immunity. *See Forrester v. White*, 484 U.S. 219, 225 (1988) ("[J]udicial immunity apparently originated, in medieval times, as a device for discouraging collateral attacks and thereby helping to establish appellate procedures as the standard system for correcting judicial error.").

The threshold question in any case is whether the act complained of is a "judicial act" entitled to such immunity. In *Forrester*, the Supreme Court explained the distinction between "paradigmatic judicial acts involved in resolving disputes between parties who have invoked the jurisdiction of a court" from "acts that simply happen to have been done by judges." 484 U.S. at 227. To determine whether an act is judicial in nature and thus covered by judicial immunity, a court considers whether:

> (1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity.

*Duvell v. County of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001).

In light of this framework, the Court cannot conclude that the Mr. Dydzak's accusations against Defendant Cantil-Sakauye involve her judicial acts. The Court is not aware of any litigation or adjudication brought by Mr. Dydzak over which Defendant Cantil-Sakauye presided and is alleged to have engaged in misconduct. The sole allegation against Defendant Cantil-Sakauye here concerns her supposed ex parte communications with federal judges to influence the outcome of cases in federal court (not the state Supreme Court). Compl. ¶¶ 91, 93. In that context, the alleged conduct does not appear to pertain to "judicial acts" by Defendant Cantil-Sakauye; there is no, *e.g.*, order or ruling issued by Defendant Cantil-Sakauye challenged herein.

On the other hand, Mr. Dydzak's allegations against the federal judges presiding over the

10

district court and appellate proceedings in *Dydzak v. Schwarzenegger*, *Dydzak v. George*, *Dydzak v. Schwab*, and *Dydzak v. Cantil-Sakauye* plainly relate to "judicial acts." He alleges those judges engaged in ex parte communications with persons who had an axe to grind against him, or that the judges had conflicts of interests, both of which Mr. Dydzak contends tainted their rulings against him. The challenged orders – such as orders dismissing Mr. Dydzak's claims, orders denying motions for disqualification, orders denying his appeals, orders transferring his case, etc. – are "paradigmatic judicial acts." *Forrester*, 484 U.S. at 227. That Mr. Dydzak's allegations relate to the integrity of the judicial process or the fairness of the adjudication does not deprive the acts of their judicial character. *Stump v. Sparkman*, 435 U.S. 349, 359 (1978) ("[A] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors."); *see also Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) (declaring that allegations of conspiracy between judge and party to predetermine outcome of judicial proceeding do not pierce judicial immunity); *Harvey v. Waldron*, 210 F.3d 1008, 1010 (9th Cir. 2000) (judicial immunity applies "however erroneous the act may have been" and "however injurious in its consequences it may have proved to the plaintiff").

Further, Mr. Dydzak's requested relief – such as declarations that the Central District of California, the District of the District of Columbia, and the Ninth Circuit Court of Appeals rulings are unlawful or null and void, or injunctions requiring the judges of other courts to recuse themselves – are precisely the type of "horizontal appeal" and "reverse review" that *Mullis* forbids this Court from undertaking. Moreover, the application of judicial immunity here does not deprive Mr. Dydzak of a means to raise his grievances. Quite the contrary, the type of judicial errors alleged are precisely the kind any litigant may raise through the normal appellate process – and Mr. Dydzak has taken full advantage of those opportunities, as illustrated above.

Finally, clerks of the court performing tasks that are "an integral part of the judicial" process enjoy quasi-judicial immunity. *Mullis*, 828 F.2d at 1394 (9th Cir. 1987). Defendants Molly Dwyer (Clerk of the Ninth Circuit Court of Appeals) and Kiry Gray (Clerk of the Central District of California) are alleged to have blocked Mr. Dydzak's phone calls or refused his filings, based on the order of the Ninth Circuit panel and therefore one related to an integral part of the

11

judicial process. They therefore also enjoy immunity from suit for those actions.

For these reasons, the Court **DISMISSES, with prejudice,** the First, Ninth, Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, Seventeenth, Eighteenth, Nineteenth, Twentieth, Twenty-Fifth, and Twenty-Sixth causes of action against all of the federal judges and clerks of the court.

C. <u>Plaintiff's State Tort Claims</u>

Plaintiff brings state court claims for intentional infliction of emotional distress and conspiracy to interfere with lawful court process against Defendant Cantil-Sakauye. He brings similar causes of action against Defendants Ronald George, Eric George, Alan Rothenberg, Matt Rogers, Charles Schwab, McKinsey, and Jeffrey Bleich. These claims are premised on allegations that Defendants conspired to improperly influence the judges presiding over Mr. Dydzak's prior litigation, resulting in decisions adverse to him which also caused him emotional distress.

With respect to the conspiracy claims, Mr. Dydzak fails to plead sufficient specific factual material to render his allegations of conspiracy plausible under *Iqbal* and *Twombly*. His allegations are conclusory and lack specifics, such as the time and place of the purported agreements and ex parte communications or their contents. At the hearing, Mr. Dydzak confirmed that he could provide no more detail to support his allegations without the opportunity to conduct discovery and to take depositions. His allegations are insufficient to plausibly infer that Defendants "had knowledge of and agreed to both the objective and the course of action that resulted in the injury, that there was a wrongful act committed pursuant to that agreement, and that there was resulting damage," as required to state a claim for civil conspiracy under California law. *Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.*, 131 Cal.App.4th 802, 823 (2005) (quotation omitted).

Moreover, Mr. Dydzak's sole basis for maintaining that the conspiracies were plausible is that various Defendants and non-parties know each other, have mutual friends, or have some sort of professional association. As a single illustrative example, Mr. Dydzak alleges that Defendants Cantil-Sakauye and Defendant Rogers were friends and that both knew Defendant Jeffrey Bleich, who is allegedly a neighbor of Defendant Cantil-Sakauye and acted as a conduit between the two

12

judges to have Defendant Rogers dismiss *Dydzak v. Schwab*. Compl. ¶ 91. Such relationships, he claims, created an "opportunity" to conspire. Standing alone, however, the mere fact that Defendants are alleged to have known each other or to have known persons in common is not sufficient to render Mr. Dydzak's allegations of conspiracy plausible. *Cf. In re Citric Acid Litig.*, 191 F.3d 1090, 1103 (9th Cir. 1999) (rejecting request "to infer participation in the conspiracy from the opportunity to do so"); *In re California Title Ins. Antitrust Litig.*, No. 08-1341 JSW, 2009 WL 3756686, at *3 (N.D. Cal. Nov. 6, 2009) ("[O]pportunity, without more, is not a plausible basis to suggest a conspiracy."). The alleged facts must support not just an opportunity to conspire, but an actual conspiracy itself, i.e., the existence of an agreement to commit a wrongful act. They do not. The purported connections and associations Mr. Dydzak elsewhere draws between the Defendants are based on sheer speculation and are similarly implausible. The breadth and number of successive lawsuits brought by Mr. Dydzak confirms the implausible nature of this claim.

Further, *Twombly* suggests that allegations of an illegal or unlawful conspiracy must be supported by factual allegations that tend to rule out the possibility of a lawful explanation for the defendants' conduct. *See* 550 U.S. at 556-57. Mr. Dydzak's preferred explanation for the adverse rulings against him in at least four different lawsuits is a vast conspiracy involving no less than 15 federal judges and court clerks at the district court and appellate level across California, Washington, Montana, and the District of Columbia, two state court judges, four banks and investment advisors, three private attorneys, and a judge's spouse. There is hardly enough factual material alleged to render that explanation more reasonable than the possibility that the contested rulings – which have been thoroughly litigated and subjected to appellate review – were meritorious.

With respect to the intentional infliction of emotional distress claims, Mr. Dydzak's complaint includes only a threadbare recital of the elements of a claim. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Aside from the fact that the underlying allegation of conspiracy is implausible, Mr. Dydzak also fails to "allege facts that demonstrate he suffered 'emotional distress

13

of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it.'" *Steel v. City of San Diego*, 726 F.Supp.2d 1172, 1191-92 (S.D. Cal. 2010) (quoting *Kiseksey v. Carpenters' Trust for So. Cal.*, 144 Cal.App.3d 222, 231 (1983)). That is insufficient to state a claim.

For these reasons, the Seventh, Eighth, Twenty-Third, and Twenty-Fourth causes of action against Defendant Cantil-Sakauye are **DISMISSED**. The Seventh, Eighth, Twenty-First, Twenty-Second, Twenty-Third, Twenty-Fourth, Twenty-Seventh, and Twenty-Eighth causes of action against Defendants Matt Rogers, Charles Schwab, McKinsey, Alan Rothenberg, Ronald George, Eric George, and Jeffrey Bleich are also **DISMISSED**. These claims are dismissed **with prejudice** in light of Mr. Dydzak's concession that he can present no additional factual allegations to render the allegations plausible without an opportunity to conduct discovery.

D. <u>Plaintiff's Second and Third Causes of Action (Intentional Infliction of Emotional Distress and Federal Wiretap Act, 18 U.S.C. § 2520)</u>

The Federal Wiretap Act provides that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a). Mr. Dydzak has not identified any reason why these claims should not be dismissed for the reasons stated in the Court's order to show cause. *See* Docket No. 14 at 5-6.

Mr. Dydzak alleges that attorneys Defendants Eric M. George, Ronald M. George,[5] and Alan Rothenberg "intercepted and hacked into" his voice mail and text. Compl. ¶ 47. He suspects that his phone has been surveilled because his "telephone conversations have often dropped and ended, strange beeps have been heard, numerous reception problems have occurred, and conversations can often not be heard." *Id.* ¶ 50. As the Court previously explained, these allegations are implausible. Dropped calls, reception problems, and strange beeps, standing alone,

---

[5] Although Defendant George is the retired Chief Justice of the California Supreme Court, this claim is not dismissed on the basis of judicial immunity because Plaintiff alleges he "is being sued herein for unlawful and fraudulent actions he took after he left the bench." Compl. ¶ 8.

14

1  do not plausibly support the conclusion that his voice mail and text messages have been
2  intercepted or hacked. Moreover, it is unclear how the sound quality of Mr. Dydzak's phone calls
3  has anything to do with whether his text messages or voicemails have been intercepted. Even
4  assuming surveillance could plausibly be inferred, Mr. Dydzak has not alleged any facts that
5  would plausibly connect the surveillance to Defendants Eric M. George, Ronald M. George, and
6  Alan Rothenberg.

Further, as above, with respect to the intentional infliction of emotional distress claims, Mr. Dydzak's allegations amount to nothing more than a recitation of the elements of a claim, which is insufficient to state a claim. *Steel*, 726 F.Supp.2d at 1191-92.

Although the Court identified these deficiencies in its order to show cause and provided Mr. Dydzak an opportunity to address them, his response fails to present any additional factual information that could remedy the inadequacies. His Second and Third Causes of Action are therefore **DISMISSED with prejudice.**

E.   Plaintiff's Fourth Cause of Action ("Dodd-Frank Act")

Plaintiff brings a cause of action against Defendant Schwab under the Dodd-Frank Act for allegedly "engag[ing] in a systematic scheme and modus operandi, giving illicit financial incentives, kickbacks and bribes, as well as unwarranted favorable financial treatment through his [sic] various financial entities and companies, to certain federal and California judges and attorneys," in order "to harm and damage [Plaintiff] in litigation and state bar disciplinary proceedings." Compl. ¶ 65.

As a matter of pleading, Mr. Dydzak fails to allege specific factual information that renders these accusations plausible. No plausible basis is given for why Defendant Schwab would take such action to foil Mr. Dydzak's litigation, let alone to support the alleged misconduct. Further, no specific financial incentive, kickback, or bribe is alleged, let alone the amount, form, or timing of such. Mr. Dydzak's vague and conclusory allegations therefore do not meet the *Iqbal*/*Twombly* standard.

In addition, the Court asked Mr. Dydzak to identify the legal basis for a private cause of action under the Dodd-Frank Act for the alleged misconduct. *See* Docket No. 14 at 6-7. He

15

provided none.  As the Court previously noted, the Dodd-Frank Act "was passed in the wake of a financial scandal—the subprime mortgage bubble and subsequent market collapse of 2008." *Somers v. Digital Realty Trust Inc.*, 850 F.3d 1045, 1048 (9th Cir. 2017).  Its "main purposes included 'promoting the financial stability of the United States by improving accountability and transparency in the financial system' and 'protecting consumers from abusive financial services practices.'" *Id.* (quoting Pub. L. No. 111-203, 124 Stat. 1376, 1376 (2010)).  The only specific provision Plaintiff cites as a basis for his cause of action in his complaint is Section 1055 of the Dodd-Frank Act.  However, Section 1055, codified at 12 U.S.C. § 5565, merely sets out the types of relief available when enforcement proceedings are brought by the government pursuant to the Dodd-Frank Act "with respect to a violation of Federal consumer financial law." *See* 12 U.S.C. § 5564(a).  It does not appear on its face to create a private cause of action, and Mr. Dydzak has presented no legal authority that it does.  In contrast, Dodd-Frank expressly provides for a private cause of action with respect to the protection of whistleblower employees, *see* 12 U.S.C. § 5567, but Plaintiff does not allege that he was ever an employee of Defendant Schwab or that he was subsequently "discharge[d] or discriminate[d] against" in his employment on that basis.

For these reasons, and because Plaintiff has not demonstrated any possibility that he can amend to state a claim, the Court **DISMISSES** the Fourth Cause of Action **with prejudice**.

F. Plaintiff's Fifth Cause of Action (RICO)

Plaintiff alleges Defendants Eric George, Ronald George, Rothenberg, 1st Century Bank, and 1st Century Bancshares Inc. violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), codified at 18 U.S.C. §§ 1961-1968.  To recover under 18 U.S.C. § 1962(c), a plaintiff must prove (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity (known as "predicate acts"), (5) causing injury to the plaintiff's "business or property" by the conduct constituting the violation.  *See Living Designs, Inc. v. E.I. Dupont de Numours & Co.*, 431 F.3d 353, 361 (9th Cir.2005).

Plaintiff claims the RICO Defendants engaged in "massive money-laundering, bank fraud, tax fraud and other illegal activities," Compl. ¶ 70, and "obstruction of justice, money-laundering, mail, bank and wire fraud, and conversion of funds and monies of the State of California and

United States." Compl. ¶ 81. The Court warned Mr. Dydzak in its Order to Show Cause that these conclusory allegations fail to substantiate the "predicate acts" requirement of a civil RICO claim. *See* Docket No. 14 at 9. Moreover, to the extent Plaintiff alleges various forms of fraud as the predicate RICO acts, he clearly does not meet Federal Rule of Civil Procedure 9's heightened pleading requirements. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004) ("Rule 9(b)'s requirements that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity applies to civil RICO fraud claims."); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."). Plaintiff does not meet the more relaxed standards of Rule 8 on the remaining predicate acts either; he generally alleges that Defendants engaged in the unlawful behavior over the course of over a decade without alleging any specific facts from which a conclusion that the violations of law occurred can plausibly be drawn.

Plaintiff also has not plausibly alleged the existence of a plot or conspiracy between Defendants. The sole factual basis for the alleged "preferential financial treatment [given by Defendants] to said judges and attorneys through banking transactions" is an alleged comment by Defendant Rothenberg that "I'm going to get you," and a comment by Defendant George to Plaintiff that "Nobody cares what you have to say." Compl. ¶ 80. Plaintiff takes the latter as "referring, arrogantly, to his improper and illegal influence." *Id.* These alleged comments, even if true, do not plausibly support the existence of a conspiracy between Defendants or the existence of improper or illegal influence. *Cf. Twombly*, 550 U.S. at 557 (allegations of conspiracy insufficient).

Plaintiff also fails to plausibly allege that the harm he purportedly suffered was in any way linked to the purported unlawful acts or conspiracies of Defendants. The only harm alleged is that "various valid lawsuits by [Plaintiff] have been generally dismissed on bogus procedural grounds and not heard on the merits," or that "appeals are intentionally stalled inordinately, filings are illegally not permitted, or there are never rulings on pending appeals." *Id.* These, too, are conclusory allegations that fail to show proximate causation attributed to any unlawful acts by

17

Defendants. *See Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 462 (2006) ("[A] claim is cognizable under § 1964(c) only if the defendant's alleged violation proximately caused the plaintiff's injury.").

Thus, Plaintiff fails to state a RICO claim against Defendants. Plaintiff was given an opportunity to address these deficiencies and was unable to present any additional basis to support a claim. Therefore this claim is **DISMISSED with prejudice**.

G. <u>Plaintiff'sسixth Cause of Action Against Defendants United States of America, 1st Century Bank, N.A., and 1st Century Bancshares, Inc.</u>

Plaintiff seeks the appointment of a receiver "[i]n view of the RICO violations and other violations of federal law herein stated, including acts of obstruction of justice and breaches of federal banking regulations." Compl. ¶ 87. "Under federal law, appointing a receiver is an extraordinary equitable remedy, which should be applied with caution." *Canada Life Assur. Co. v. LaPeter,* 563 F.3d 837, 844 (9th Cir. 2009) (citation and quotation omitted). Although "there is no precise formula for determining when a receiver may be appointed," federal courts consider the following factors: "(1) whether the party seeking the appointment has a valid claim; (2) whether there is fraudulent conduct or the probability of fraudulent conduct, by the defendant; (3) whether the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered; (4) whether legal remedies are inadequate; (5) whether the harm to plaintiff by denial of the appointment would outweigh injury to the party opposing appointment; (6) the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property; and (7) whether the plaintiff's interests sought to be protected will in fact be well-served by receivership." *Id.* (citations and quotations omitted).

As explained elsewhere in this order, Plaintiff has not plausibly alleged a RICO violation or violations of other federal laws by Defendants 1st Century Bank, N.A., or 1st Century Bancshares, Inc. He has failed to meet the pleading requirements under Rule 9(b) for allegations of fraudulent conduct. Accordingly, there is no basis, even if Plaintiffs' factual allegations are true, to impose a receiver on the banks. Plaintiff failed to provide additional support for these allegations despite being provided an opportunity to do so.

18

Moreover, the Court notified Plaintiff that it was unaware of any legal authority that would support his request for an injunction ordering the United States to intervene in this case to pursue a receivership against the defendant banks. Plaintiff did not present any legal authority to support his request despite an opportunity to do so.

Accordingly, the Sixth Cause of Action is **DISMISSED with prejudice**.

### IV.     CONCLUSION

The *Bivens* and Section 1983 claims covered by the pre-filing order are **DISMISSED** without prejudice to re-filing consistent with that. These are the First, Ninth, Twelfth, Sixteenth, Seventeenth, Nineteenth and Twenty-Fifth Causes of Action.

All remaining causes of action are **DISMISSED with prejudice** against all Defendants for the reasons stated above and in the Court's prior order to show cause. These are the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Tenth, Eleventh, Thirteenth, Fourteenth, Fifteenth, Eighteenth, Twentieth, Twenty-First, Twenty-Second, Twenty-Third, Twenty-Fourth, Twenty-Sixth, Twenty-Seventh, and Twenty-Eighth causes of action. Accordingly, Defendant Cantil-Sakauye's motion to dismiss is therefore **GRANTED**, and all causes of action against her are **DISMISSED with prejudice**.

This order disposes of Docket No. 9. In light of this order dismissing all claims, the Court lifts the stay of proceedings as moot. *See* Docket No. 14. All hearings, including the November 16, 2017 Case Management Conference, are hereby **VACATED**.

**IT IS SO ORDERED**.

Dated: October 31, 2017

EDWARD M. CHEN
United States District Judge